Commonwealth *v*. Ransom, Appellant.

458

Argued November 15, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Andrew G. Gay,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Esther Sylvester,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Ar-*

*len Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 20, 1972:

Appellant, Stephen Ransom, was convicted of first degree murder after a jury trial and sentenced to life imprisonment. He had been charged, along with two accomplices, with assaulting and robbing one James Bryant and causing Bryant's death by fatal stabbing.

Appellant, tried alone, raises two contentions on this direct appeal: (1) the trial court improperly admitted into evidence over objection testimony summarizing the confessions of appellant's accomplices, thus denying appellant his Sixth Amendment right of confrontation; (2) the use, over objection, of testimony offered by appellant during the juvenile certification hearing at the subsequent adult trial violated the statutory bar against admission of "any evidence given in a juvenile court" "in any case or proceeding in any other court."[1] Since the trial court committed error in both instances, we vacate the judgment of sentence and remand the record for a new trial.

## Denial of Confrontation Rights

At appellant's trial, a police detective testified for the Commonwealth over objection as follows: "Q. [Prosecutor] Detective, his Honor has ruled that you may testify in this area. Tell these ladies and gentlemen precisely what you said to the accused in terms of what the others had said about him and then what his response is. Make this very clear. Go ahead. A. [Officer] I told him that Lawrence Tindal had stated that he, Jerome Layton and Steven Ransom were together when they attacked the man; and that

---

[1] Act of June 2, 1933, P. L. 1433, §19, 11 P.S. §261.

Steven Ransom was the one that stabbed the man. I told him that Jerome Layton had stated that he, Tindal and Steven Ransome were all together when they attacked the man; and that the defendant, Steven Ransom, was the one that 'shanked the man.' Q. Shanked? A. 'Shanked' the man. Q. What does that mean? A. It means to stab. . . ."

Appellant maintains that the admission of this hearsay testimony of the confessions of his two accomplices who never testified at his trial violates his Sixth Amendment right of confrontation. The Commonwealth argues that the testimony was admissible under the well-recognized exception to the hearsay rule permitting the use of a conspirator's statement made during the course of the conspiracy against other coconspirators.

In *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065 (1965), the Sixth Amendment right of confrontation was guaranteed in state trials through the Fourteenth Amendment. The Supreme Court has since clearly indicated that the Sixth Amendment right of confrontation is not a "codification" of the hearsay rule. In *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930 (1970), it was observed: "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. . . . The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic con-

clusion that confrontation rights have been denied." *Id.* at 155-56, 90 S. Ct. at 1933-34 (citations omitted) ; *Dutton v. Evans,* 400 U.S. 74, 81-82, 91 S. Ct. 210, 216 (1970) ; *Commonwealth v. Thomas,* 443 Pa. 234, 239-40, 279 A. 2d 20, 23 (1971).

In *Dutton,* the Supreme Court found no denial of confrontation rights in the admission under Georgia's exception to the hearsay rule of a statement made by a coconspirator of the accused to his cell mate implicating the accused. The Court observed that the coconspirator's ". . . statement was spontaneous and it was against his penal interest to make it. These are *indicia of reliability* which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." 400 U.S. 74, 89, 91 S. Ct. 210, 220 (emphasis added).

Therefore, well-recognized exceptions to the hearsay rule supported by circumstances guaranteeing sufficient "indicia of reliability" do not raise confrontation problems. 400 U.S. 74, 85, 91 S. Ct. 210, 218; 443 Pa. 234, 240, 279 A. 2d 20, 23; Griswold, The Due Process Revolution and Confrontation, 119 U. Pa. L. Rev. 711 (1971).

It is first necessary to determine under Pennsylvania law whether a well-recognized exception to the hearsay rule justified the admission of the testimony in question. The Commonwealth argues that the testimony was properly admitted under the coconspirator exception to the hearsay rule. The exception provides : "If a person conspires with others to do an unlawful act, each represents the other with respect to the act to be accomplished and everything said or done by any of them *in the furtherance of and during the continuance of the common purpose* is evidence against all. . . . *However, if the common enterprise is at an end, either*

*by accomplishment or abandonment,* evidence of the declarations or acts of one of the conspirators in the absence of the others *is admissible only against the one incriminating himself."* *Commonwealth v. Holloway,* 429 Pa. 344, 346, 240 A. 2d 532, 533-34 (1968) (emphasis added) ; accord, *Commonwealth v. Ellsworth,* 409 Pa. 505, 510-11, 187 A. 2d 640, 642 (1963) ; *Commonwealth v. Wilson,* 394 Pa. 588, 606-07, 148 A. 2d 234, 244 (1959) ; Henry, Pennsylvania Evidence §443 (1953).

In *Ellsworth,* we found reversible error in the admission of the coconspirator's statement, made to the police after his arrest, and after the arrest and incarceration of Ellsworth and the other conspirator, because the conspiracy had clearly terminated. In *Holloway,* a statement made at large by a codefendant after the arrest of his two coconspirators was held inadmissible against the coconspirators because the conspiracy had ended.[2] Here the conspiracy had likewise terminated when the two accomplices' statements were given to the

---

[2] *Holloway* involved a joint trial of three alleged conspirators. During the trial, a witness testified to a statement made to him by one of the conspirators. The parties conceded and we recognized that the statement had been made after the conspiracy terminated and was thereby admissible only against the declarant. The conviction was reversed however because of the failure of the trial court to charge the jury that they could consider the statement only in determining the guilt or innocence of the declarant. *Holloway* was decided a month before the United States Supreme Court's decision in *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620 (1968), where it was held that limiting instructions were not sufficient to prevent the jury from using the declarant's statement to determine the guilt or innocence of his coconspirators, thereby causing a denial of confrontation rights to the other codefendants then on trial and implicated by the statement. *Bruton* appears to undermine if not reverse the holding of *Holloway.* The statement of the coconspirator exception to hearsay rule, however, cited in this opinion, stands unquestioned.

police. Both accomplices were under arrest and in custody. While appellant had not yet been arrested, we find this of little consequence. The robbery had been accomplished and the "proceeds"[3] divided. *Commonwealth v. Ellsworth*, 409 Pa. 505, 511, 187 A. 2d 640, 643 (1963).

Authorities are almost unanimous that the coconspirator exception to the hearsay rule no longer applies once the object of the conspiracy has been completed and one or more of the conspirators is under arrest and in custody. Henry, Pennsylvania Evidence §443 (1953); McCormick, Evidence §244 at 521-22 (1954); 2 Wharton, Criminal Evidence §429 at 203, §433 (12th ed. 1955); 4 Wigmore, Evidence §1079 (3d ed. 1940); Rules of Evidence for the United States District Courts and Magistrates, §8-01(3) (Preliminary Draft, 1969); American Law Institute, Model Code of Evidence §508 (b) (1942). The requirements that the conspiracy not have terminated is generally supported by considerations of trustworthiness: "What one of the conspirators admits *while the plot is afoot about the plan or the happenings in its execution,* is said by one who has special knowledge and generally is against the declarant's interest." McCormick, Evidence §244 at 522 (1954) (emphasis added).

In contrast, the confessions of appellant's two accomplices here were made to the police while in custody after the conspiracy had accomplished its object and terminated. The element of trustworthiness, underlying the coconspirator exception to the hearsay rule, is no longer present to supply the "indicia of reliability" of this testimony. We are therefore faced with the ". . . use or misuse, of a confession made in the coer-

---

[3] The only "proceeds" taken from the robbery victim was a watch later found in the possession of one of appellant's accomplices.

cive atmosphere of official interrogation. . . ." *Dutton v. Evans,* 400 U.S. 74, 87, 91 S. Ct. 210, 219 (1970).

In the absence of any other well-recognized exceptions to the hearsay rule, we must face the question whether the admission of this testimony violated appellant's confrontation rights.[4] Since the accomplices did not testify at appellant's trial, there was no op-

---

[4] Appellant bases his claim of denial of confrontation rights solely on *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620 (1968), ruled retroactive in *Roberts v. Russell,* 392 U.S. 293, 88 S. Ct. 1921 (1968). We find *Bruton* inapposite to the present case. *Bruton* and a codefendant were jointly tried for armed postal robbery. The codefendant's confession was admitted through the testimony of a postal inspector. The question faced by the Court was whether the limiting instructions to the jury were sufficient to insure that the jury used the confession to determine the guilt or innocence of the declarant, not also the guilt or innocence of Bruton. In reversing and declaring the use of limiting instructions insufficient to avoid the denial of Bruton's confrontation rights, the Court observed: "We emphasize that the hearsay statement, inculpating petitioner was clearly inadmissible against him under traditional rules of evidence . . . the problem arising only because the statement was . . . admissible against the declarant Evans. . . . There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned. . . ." 391 U.S. 123, 128 n.3, 88 S. Ct. 1620, 1623-24 n.3 (1968). In *Bruton,* as in the present case, the statements of the accomplices were inadmissible under the hearsay rule. The present case, however, does not involve a joint trial and the question raised therefore is not the validity of limiting instructions to the jury, but simply whether the lack of opportunity to test the credibility of the accomplice's confession and the absence of any circumstances supplying "indicia of reliability" is a denial of confrontation rights.

In *Commonwealth v. Thomas,* 443 Pa. 234, 279 A. 2d 20 (1971), we faced the question whether the use of hearsay statements of the deceased victim violated the confrontation rights of the accused. We concluded that the statements were properly admitted because they ". . . indicated an existing intent or state of mind of the deceased-declarant; and '. . . since such declarations were made in a "natural manner" and were material and relevant. . . .' " Id. at 241, 279 A. 2d at 24.

portunity to cross-examine and test the credibility of their confession. Nor were there any previous opportunities to probe the credibility of the confessions.

In *Douglas v. Alabama,* 380 U.S. 415, 85 S. Ct. 1074 (1965), the Supreme Court found a denial of confrontation rights where an accomplice, tried previously, was called by the state to testify at petitioner's trial. Upon the accomplice's claims of the Fifth Amendment privilege,[5] the state was permitted to read his confession to the jury under the guise of cross-examination to refresh the recollection of the witness. The Court in finding a violation of confrontation rights, observed that ". . . the opportunity to cross-examine the law enforcement officers who identified the accomplice's confession was not adequate to redress this denial of the essential right secured by the Confrontation Clause. . . . [S]ince their evidence tended to show only that Lloyd [accomplice] made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of Lloyd to test the truth of the statement itself." Id. at 419-20, 85 S. Ct. at 1077.

We find no significant distinctions between *Douglas* and the present case. If anything, our case is more compelling because the accomplices whose statements were offered into evidence never even appeared to testify. Nor was the opportunity to cross-examine the police officer who testified to the substance of the confessions a substitute for cross-examination of the declarant. There was neither opportunity for cross-examination when the statement was made nor when it was introduced at trial. *California v. Green,* 399 U.S.

---

[5] The accomplice, Lloyd, planned to appeal his conviction and was advised by counsel to invoke the Fifth Amendment privilege. *Douglas v. Alabama,* 380 U.S. 415, 416, 85 S. Ct. 1074, 1075 (1965).

149, 158-59, 90 S. Ct. 1930, 1935 (1970); *Hoover v. Beto,* 439 F. 2d 913, 924 (5th Cir. 1971).

In *Hoover,* the accused and three accomplices were charged with armed robbery. All were separately tried. At Hoover's trial, the oral confession of an accomplice was admitted through the testimony of a police officer. In recognizing a denial of confrontation rights and granting habeas corpus, the court first observed that the state failed to call the accomplice as a witness and then noted: "That Sellars was available to be called as a witness does not mitigate the prosecution's misconduct here. The State sought to shift to the defendant the risk of calling Sellars to the stand. To accept the State's argument that the availability of Sellars is the equivalent of putting him on the stand and subjecting him to cross-examination would severely alter the presumptions of innocence and the burdens of proof which protect the accused. Hoover's undoubted right to call Sellars as a witness in his behalf cannot be substituted for his Sixth Amendment right to confront Sellars as a witness against him." 439 F. 2d at 913, 924. Likewise, in the present case appellant's option to call his two accomplices as witnesses would have been no substitute for the right to cross-examine them after they testified for the Commonwealth. The introduction therefore of the confessions of the accomplices through the testimony of the police officer violated appellant's confrontation rights.

## Statutory Violation

Appellant, sixteen years old when arrested as a juvenile offender, testified at the juvenile certification hearing concerning the voluntariness of his confession secured after his arrest. He stated that no one had hit him during the interrogation. Later, at his adult trial appellant testified that he was beaten and coerced

into giving his confession. The Commonwealth over objection was allowed to use his prior statement made at the certification hearing for impeachment purposes.

The Act of June 2, 1933, P. L. 1433, §19, 11 P.S. §261 provides: "The disposition of a child or *any evidence given in a juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court*." (Emphasis added.) The issue presented is whether a certification proceeding, following a charge of murder against a juvenile, occurs "in a juvenile court" within the statute.

The nature of a certification proceeding was resolved in *Gaskins Case*, 430 Pa. 298, 244 A. 2d 662 (1968). We held ". . . that when a juvenile has been charged with murder, and a prima facie case has been made out by the Commonwealth in *Juvenile Court proceedings*, such juvenile must be held for further criminal proceedings." Id. at 310, 244 A. 2d at 669 (emphasis added) ; *Commonwealth v. McIntyre*, 435 Pa. 96, 98, 254 A. 2d 639, 641 (1969). If the Commonwealth fails to prove a prima facie case, the juvenile remains within the custody of the juvenile court. Nevertheless we declared that the court has a dual identity as a juvenile court and a committing magistrate. Judicial economy compelled this conclusion because ". . . it would be unreasonable for [the court] to listen to the testimony as to delinquency and, if the testimony disclosed a prima facie case of murder, then to rehear the entire testimony as a committing magistrate." 430 Pa. 298, 308, 244 A. 2d 662, 667-68. The certification proceeding therefore remains in effect a juvenile proceeding until the Commonwealth has proved a prima facie case of murder.

The Commonwealth nevertheless argues that any certification proceeding in which a prima facie case of murder is established does not fall within the stat-

ute. We cannot agree. We can find no statutory basis for depriving juveniles who are subsequently certified to the criminal courts the protections of the statute while granting them to juveniles who remain within the jurisdiction of the juvenile court. If the Commonwealth's interpretation were to prevail, the statutory protection might be undermined for all juveniles charged with murder. The fear of a subsequent use of a statement at an adult trial, should the Commonwealth establish a prima facie case of murder, might deter any juvenile charged with murder from testifying at the certification proceeding.

In light of the fact that a certification proceeding occurs in a "juvenile court" and appellant's statement offered therein was used in a subsequent proceeding "in another court," the statute was clearly violated. Nor can it be argued that the limited use of the statement for impeachment purposes takes this case outside of the statute. The statutory prohibition against the admissibility of "any evidence given in a juvenile court" includes evidence offered for any purpose—substantive or impeachment.

We cannot view the improper admission of appellant's prior statement and the confessions of his two accomplices as harmless error. Appellant tried to attack the credibility of his confessions, thereby exercising his procedural right guaranteed by Rule 323(j), only to have his attack weakened by the improper use of his prior statement for impeachment purposes in violation of the statute. Furthermore, the confession admitted into evidence which he tried to challenge was improperly buttressed by the admission of the confessions of his accomplices in violation of his confrontation rights.[6] We are not convinced beyond a reason-

---

[6] Both errors severely undermined appellant's right to attack the credibility of his confession before the jury. Rule 323(j) of

able doubt that these errors were harmless. See *Harrington v. California,* 395 U.S. 250, 89 S. Ct. 1726 (1969) ; *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967) ; *Commonwealth v. Camm,* 443 Pa. 253, 268, 277 A. 2d 325, 333 (1971) ; *Commonwealth v. Padgett,* 428 Pa. 229, 237 A. 2d 209 (1968).

The judgment of sentence is reversed and the record is remanded for a new trial.

Mr. Justice POMEROY concurs in the result.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

the Pennsylvania Rules of Criminal Procedure establishes that "nothing herein shall prevent a defendant from opposing such evidence [confession] at trial upon any ground except its admissibility."