Commonwealth *v.* Sampson, Appellant.

Argued April 23, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Charles Lowenthal,* for appellant.

*J. Bruce McKissock,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November 26, 1973:

At about 4:15 p.m. on September 14, 1969, Henry Stevenson (decedent), sixty-nine years of age, was found lying on the floor behind the counter in his grocery store, at 2801 North Ringgold Street in Philadelphia, suffering from numerous knife wounds; he died at the store at about 5:30 p.m. Appellant was subsequently arrested, on September 23, 1969, and indicted

for burglary, murder and aggravated robbery. On June 14, 1971, appellant was brought to trial and pleaded not guilty. The jury, on June 24, 1971, found appellant guilty of first-degree murder, burglary and aggravated robbery. Appellant's post-trial motions for a new trial and in arrest of judgment were argued before the court en banc on April 13, 1972, and denied in an opinion and order filed on July 3, 1972. Sentence was fixed at ten to twenty years on both the burglary and aggravated robbery charge to run concurrent with a sentence of life imprisonment for the murder charge. This appeal followed.

In a signed statement, which was admitted into evidence at trial, appellant described the incident that resulted in decedent's death, alleging that a friend named "Mingo" also participated. According to appellant, he was walking with "Mingo" at approximately 3:00 p.m., approaching the street where decedent's store was located, when "Mingo" said that he wanted some money and suggested that they go into decedent's store. Decedent unlocked the door and appellant and "Mingo" entered. "Mingo" pushed decedent as decedent was going behind the counter. Decedent then turned around, picked up a knife and started swinging. "Mingo" ran around to the other side of the counter. Appellant backed away and was cut on the left forearm by decedent. As appellant backed away he saw "Mingo" with a knife in his hand "charging" decedent. Appellant looked at his arm and then decedent hit the floor. Appellant did not see "Mingo" stab decedent. Appellant and "Mingo" left after searching the store for money. When they got outside "Mingo" gave appellant a paper bag full of change—"Mingo" kept an envelope. Appellant bandaged the cut himself at his grandmother's house immediately after the incident.

The record further discloses that the left front pocket of decedent's pants was turned inside out and

cut and that his body was blood soaked. Four prosecution witnesses saw appellant on the afternoon of the killing: all four testified that his left arm was bandaged and three testified that he was wearing blood-spotted clothing. One witness stated that when he saw appellant, appellant was carrying a brown paper bag containing change. Appellant told one of the prosecution witnesses that he hurt his arm playing football. He told another prosecution witness, however, that he cut it going through a window on Ringgold Street and that he (appellant) got some money. At the close of the Commonwealth's case, the defense rested.

Appellant's initial argument stems from the testimony of Detective Francis McGurk of the Homicide Division of the Philadelphia Police Department, who was assigned to investigate decedent's death and to question appellant. On direct examination, testifying for the Commonwealth, Detective McGurk read appellant's signed statement to the jury. Although the statement contained numerous references to "Mingo", at no time during direct examination was Detective McGurk questioned concerning "Mingo's" identity or his alleged participation in the killing. Nor did any of the other Commonwealth witnesses mention that a person named "Mingo" was also involved in the killing. On cross-examination Detective McGurk was questioned about "Mingo." Appellant's attorney established that a person known as "Mingo" had been apprehended on September 24, 1969, and had given a statement but was later released and not charged with the crime. On redirect examination, over the objections of appellant's attorney, Detective McGurk testified that "Mingo" denied participating in this incident in his statement and when confronted with appellant on two occasions. In addition, Detective McGurk stated that "Mingo" was not arrested since appellant's statement was the only evidence connecting "Mingo" with the crime.

Appellant contends that Detective McGurk's testimony as to the statements made by "Mingo" were hearsay and that the lower court denied his Sixth Amendment right of confrontation by admitting these statements into evidence. We disagree. Testimony as to an out-of-court statement is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made. *Commonwealth v. Jacobs,* 445 Pa. 364, 284 A. 2d 717 (1971); *Commonwealth v. Ricci,* 332 Pa. 540, 300 A. 2d 404 (1939); Henry, Pennsylvania Evidence §441 (Supp. 1972); 6 Wigmore, Evidence §1766 (3d Ed. 1940). The statements by "Mingo" that he was not involved in the killing of decedent were offered not for their truthfulness, but to show that the statements were made, thus explaining, in part, why the police did not arrest and charge "Mingo." In a similar situation, in *Commonwealth v. Tselepis,* 198 Pa. Superior Ct. 449, 181 A. 2d 710 (1962), the Court held that police testimony that they had been "tipped" that defendant was conducting a lottery at his store was admissible to show why the police followed a certain course of action.

Appellant's claim that he was denied his right of confrontation is also without merit. The Sixth Amendment as applied to the States through the Fourteenth Amendment[1] provides in part that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." The accused's right of confrontation, which has been held to include the right to cross-examine accusing witnesses,[2] is violated when an out-of-court statement of a third person *implicating the accused* is introduced at trial. *Bruton v. United States,* 391 U.S. 123 (1967). As was pointed out in the lower court's opinion, "Min-

---

[1] *Pointer v. Texas,* 380 U.S. 400 (1964).

[2] *Id.* at 401, 406-07.

go's" statement did not incriminate or even concern appellant; it merely exculpated "Mingo." Moreover, it was proper for the district attorney to bring such information out on redirect examination so that the jury would not receive distorted impressions of the facts from the new matter brought out by cross-examination. *Commonwealth v. Kauffman*, 155 Pa. Superior Ct. 347, 38 A. 2d 425 (1944).

Appellant's claim that he was denied his confrontation rights is based on *Commonwealth v. Ransom*, 446 Pa. 457, 288 A. 2d 762 (1972). *Ransom*, however, is distinguishable since there the out-of-court statements were made by co-conspirators, implicated the accused and were inadmissible hearsay.

Appellant next claims that a portion of the district attorney's closing argument was prejudicial and improper. However, appellant's counsel neither objected during or at the end of the district attorney's closing argument, nor filed a motion to strike or a motion for mistrial. Appellant, therefore, is precluded from raising the issue now, since he failed to object at a time when any error could have been cured by the court. *Commonwealth v. White*, 442 Pa. 461, 275 A. 2d 75 (1971).

Judgment of sentence affirmed.

Mr. Justice Roberts concurs in the result.

---

Dissenting Opinion by Mr. Justice Eagen:

The summation of the assistant district attorney in this case violated the rules of propriety and was an immature attempt to convict the accused by appealing to the passions and prejudices of the jury. Moreover, it constituted the giving of testimony by an unsworn witness. See *Commonwealth v. Clark*, 322 Pa. 321, 185 A. 2d 764 (1936). In my view, a new trial is, therefore, required.

Regardless of the nature of the crime charged, the accused is entitled to a fair and impartial trial. The summation of the assistant district attorney instantly deprived the accused of this right.

It is true that defense counsel failed to interpose a timely objection,[1] but as this Court said in *Commonwealth v. Stowers*, 363 Pa. 435, 437, 70 A. 2d 226-227 (1950): "[I]n a *homicide case,* where a defendant's life or liberty is at stake, and where defendant may have been deprived of a fair and impartial trial, or suffered manifest injustice, and appellate court will review the case notwithstanding the failure of defendant's counsel to take proper exceptions." [Emphasis original.] See also *Commonwealth v. Silvis,* 445 Pa. 235, 284 A. 2d 740 (1971), and *Commonwealth v. Lynott,* 133 Pa. Superior Ct. 565, 3 A. 2d 207 (1938).

I respectfully dissent.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

The majority opinion seeks to minimize appellant's objection to that portion of Detective McGurk's testimony in which he stated that "Mingo" denied participation in the incident in a statement given to the police and also when confronted with appellant on two occasions. The opinion states that the Sixth Amendment right of confrontation was not offended on the theory that the statements were not hearsay but offered merely to prove that "Mingo" had made these denials. I cannot agree and therefore respectfully dissent.

Appellant in his statement to police officials admitted being a participant in the incident but placed the onus upon "Mingo" who he alleged was also a participant and implied that "Mingo" had delivered the fatal wound. Accepting the defendant's version, "Mingo" was *at least* equally culpable. To argue that with-

---

[1] The error was raised in the motion for a new trial.

222

in this context that "Mingo's" statement was offered only for the purpose that the denials were made and not for the truth of these protestations of innocence would attribute to the jury a naivete that I would have difficulty ascribing to the most sheltered and unsophisticated member of our society.

Informing the jury that the appellant had implicated "Mingo" and that "Mingo" was released after he had denied his participation *in the presence of the appellant* necessarily left the inference that the police had rejected the appellant's statement of what occurred and accepted "Mingo's" assertions to the contrary. Even more objectionable is that no reason was offered to suggest the basis of the police determination as to why the decision was made and left to the jury's imagination the myriad of possibilities why the authorities had seen fit to accept "Mingo's" explanation and rejected that of the appellant's.

If the Sixth Amendment offers any protection I cannot conceive of a situation where its protection is needed more than in the instant appeal. The appellant had a right to have "Mingo" face this jury, undergo cross-examination and then the jury would have been in a position to determine which of the two were worthy of belief.