380 A.2d 486

**COMMONWEALTH of Pennsylvania**

v.

**Emanuel F. FARRIS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1977.

Decided Dec. 2, 1977.

Holly Maguigan, Philadelphia, for appellant.

Charles Klein, Assistant District Attorney, Philadelphia, with him F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellant was held for trial on five bills of indictment. Two of the bills were for robbery, two for weapons offenses, and one for conspiracy. The Commonwealth did not move for trial on the two weapons bills, and eventually these were nol prossed. A jury found appellant not guilty on the two robbery bills, and guilty on the conspiracy bill. Appellant's post-trial motions were denied, and he was sentenced to 18 months to 3 years in prison. On this appeal he raises several issues, but we find it necessary to consider only one.

At the trial the only issue of substance was identification. On October 14, 1975, at about 8:00 p.m., a man burst through the door of Dave's Tavern in Philadelphia, brandished a gun, and ordered everyone to "hit the floor." The proprietor of the bar identified this man as appellant. He saw the man's face for "a matter of seconds." (N.T. at 76). The man with the gun and another man took money from the cash register and from the occupants of the tavern, and left. An off-duty police officer happened to be outside the tavern. He saw two men with guns run out and get into a car. The officer identified appellant as one of the two men. He saw the man he identified as appellant for no more than fifteen seconds, during most of which time he saw only the man's back; he saw the man's face for "I would say three seconds." (N.T. at 13). The officer was able to get the license number of the car the two men got into, and before the car drove away, he got a full-face view of the driver, whom he later identified as one Gary Moore. The officer was not able to see well enough to be sure how many men were in the car, but there may have been a fourth man. (N.T. at 15)

The bartender testified, but he could not identify the robbers. (N.T. 107) There was also testimony regarding recovery of guns from a car identified as belonging to Gary Moore.

In addition, a detective, Robert Aiken, testified; it is his testimony that concerns us. The testimony was as follows:

By [LEONARD ROSS] the Assistant District Attorney:

Q. What, if anything was the first thing you did once you received the assignment in [the robbery of Dave's Tavern] case?

A. Well, one of the first things I did was interrogate Gary Moore.

Q. Was he already in police custody at that time?

A. Yes, he was.

Q. Did Gary Moore say something to you?

A. He made a statement to me, yes.

MISS MAGUIGAN [Appellant's counsel]: Objected to, Your Honor.

MR. ROSS: Your Honor, it is a statement of fact, not hearsay.

THE COURT: All right. Objection overruled. Go ahead.

Q. As a result of what Gary Moore told you, what if anything did you do?

A. I arrested Emanuel Farris.

N.T. 48–49.

We hold that the objection by appellant's counsel should have been sustained. We hold further that on the facts of this case the failure to sustain the objection requires a new trial.[1]

1. The Commonwealth argues that the objection was not timely. However, if the answer had been, "No," there would have been nothing to object to. As soon as there was something to object to ("made a statement"), counsel did object. When the objectionable evidence appears not in the question but in the answer, a prompt objection to the answer is timely. *See generally* 1 Wigmore on Evidence § 18 at 323–331 (3d ed. 1940). The Commonwealth also argues that appellant's counsel should have moved to strike the detective's answer, "I arrested Emanuel Farris." By itself, how-

■ The Commonwealth argues that since "the statement itself was never read to the jury . . . Detective Aiken's testimony . . . does not constitute hearsay." Commonwealth's Brief at 19. According to the Commonwealth, "Moore's statement . . . was merely referred to as part of the investigation . . . ." *Id.* The lower court accepted this argument, saying that "Detective Aiken merely described the steps in his investigation leading to the arrest of Emanuel Farris." Slip Opinion of Lower Court at 2.

To regard the testimony in this manner is disingenuous. By no means did the detective "merely describe[ ]" his investigation; what he did—that is, what the testimony elicited from him by the assistant district attorney did—was to tell the jury: "I interrogated Gary Moore, and he told me that one of the men involved in the robbery was Emanuel Farris, and so I arrested Farris."

There can be little doubt—we have none—that this is just what the jury understood the detective to say. Common sense tells us so: a jury is not likely to make nice legal distinctions between a flat-out narrative ("Moore told me that . . . .) and an oblique narrative ("as a result of what Moore told me, I did . . . .). Furthermore, it is plain that the jury did not have much confidence in either

ever, that answer was not objectionable. What made it objectionable was its conjunction with the earlier answer. "He made a statement to me, yes." Counsel's objection to that earlier answer had already been overruled; a motion to strike the later answer was therefore plainly futile. While a reversal will not be granted where counsel acquiesces in the erroneous admission of evidence, *Comm. v. Emery,* 273 Pa. 517, 117 A. 338 (1922), there was no acquiescence here. Indeed, before the detective testified counsel asked the trial judge to instruct the assistant district attorney to avoid eliciting any testimony that "my client was arrested as a result of what Gary Moore said." (N.T. 32). Counsel argued to the judge, as she does to us, that such testimony would be hearsay. The judge, however, overruled her argument. (N.T. 34). Finally, the Commonwealth argues that counsel should have requested cautionary instructions, but such instructions cannot cure the admission of a hearsay statement identifying a defendant as one of several participants in a crime. *See Commonwealth v. Ransom,* 446 Pa. 457, 288 A.2d 762 (1972), discussed *infra.*

the proprietor's or the police officer's identification of appellant, or else it would not have acquitted appellant on both of the robbery bills; the conviction of appellant on the conspiracy bill must have derived from, or depended upon, some juror saying to the other jurors, "But the detective said Moore told him Farris was involved." (In this regard it should be noted that the identifications of appellant, both based as mentioned above on very brief observation, were the only evidence against appellant. No physical evidence was recovered from appellant; no statement was attributed to him; and he did not testify.)

There can also be little doubt—and again, we have none—that the assistant district attorney intended to get across to the jury that Moore had identified appellant as involved in the robbery. That was the only reason to question the detective as he was questioned. Sometimes, to be sure, it will be relevant to ask a law enforcement officer to "describe the steps in your investigation," for example, when the issue is whether the officer had reasonable cause to get a search warrant or to make an arrest. Here, however, the facts that the detective had taken "a statement" from Moore, and had then "[a]s a result of" that statement arrested appellant, were of no possible relevance—*except* to show that Moore had told the detective that appellant was involved in the robbery.

Had the detective testified flat-out, "Moore told me that one of the men involved was Farris," it would be clear beyond reasonable argument that the testimony would have been hearsay: it would have been an assertion by someone not in court (Moore), offered for its truth (that one of the men was Farris), and thus depending for its value upon the credibility of the out-of-court asserter. *See generally* McCormick on Evidence § 246 (Cleary ed. 1972). The Commonwealth should not be permitted to evade this principle by having the detective testify obliquely rather than flat-out. As McCormick observes:

*Indirect versions of hearsay statements; negative results of inquiries.* If the apparent purpose of offered testimony

is to use an out-of-court statement to evidence the truth of facts stated therein, the hearsay objection cannot be obviated by eliciting the purport of the statements in indirect form. Thus evidence as to the purport of "information received" by the witness, or a statement of the result of investigation made by other persons, offered as evidence of the facts asserted out of court, have been held to be hearsay.

McCormick, *supra,* § 249, at 593–94 (footnotes omitted).[2]

Here, Moore, the out-of-court asserter, did not testify. He was therefore not subject to cross-examination, either to test the basis of his statement to the detective that appellant had been one of the men involved in the robbery, or to uncover any motive he might have had to lie about appellant's involvement. As in all hearsay situations, cross-examination of the detective could not test either Moore's accuracy or his bias.

Of course, none of this would matter if Moore's hearsay statement to the detective were within an exception to the hearsay rule. Had the statement been made on the scene, it might have been within the spontaneous declarations exception. McCormick, *supra,* §§ 288–298. Or had the statement been made in furtherance of a conspiracy, it might have been within the exception for admissions. McCormick, *supra,* § 267, at 645–46. There is no suggestion, however, nor any argument by the Commonwealth, that the statement was within either of these exceptions to the hearsay rule, or within any other exception.

The Commonwealth does cite *Commonwealth v. Wright,* 455 Pa. 480, 317 A.2d 271 (1974), but that case is not in point. There the question was whether an out-of-court statement had been properly admitted to show the declarant's attitude towards the defendant. The declarant's attitude was rele-

2. In one of these omitted footnotes McCormick cites Falknor, "Indirect Hearsay," 31 Tul.L.Rev. 3 (1956). There, characterizing this sort of hearsay as "obscured" hearsay, *id.,* Professor Falknor collects many cases where the statement of the witness was in its effect a statement of what someone not in court had told the witness.

vant because it tended to explain why she stepped onto a window ledge from which she fell to her death. The defendant was charged with her murder. Holding that the statement had been properly admitted, the Supreme Court said:

> The hearsay rule does not apply to all statements made to or overheard by a witness, but only to those statements which are offered as proof of the truth of what is said. [Citations omitted.] Thus, a witness may testify to a statement made to him when one of the issues involved is whether or not the statement was, in fact, made. [Citations omitted.]

*Id.* 455 Pa. at 485, 317 A.2d at 273.

Here, as has been discussed, Moore's statement to the detective *was* "offered as proof of the truth of what [Moore] said" (that appellant was one of the men). Perhaps the statement was evidence of Moore's attitude towards appellant. However, what that attitude was was a fact of no possible relevance.

The controlling case is *Commonwealth v. Ransom,* 446 Pa. 457, 288 A.2d 762 (1972). There a detective was permitted to testify over objection that an out-of-court declarant had identified the defendant as having participated in the crime. First the Supreme Court considered whether the declarant's statement was within any exception to the hearsay rule. Having determined that it was not, the Court next proceeded to "face the question whether the admission of this testimony violated [the defendant's] confrontation rights." *Id.* 446 Pa. at 464, 288 A.2d at 765 (footnote omitted). The Court concluded that the admission had violated the defendant's confrontation rights, and therefore awarded a new trial. That is what we order here.

Accordingly the judgment of sentence is vacated and a new trial is granted.

WATKINS, President Judge, and PRICE and VAN der VOORT, JJ., dissent.