517 A.2d 1327

**COMMONWEALTH of Pennsylvania**

**v.**

**William WHITING, Appellant.**

Superior Court of Pennsylvania.

Argued June 24, 1986.

Filed Nov. 18, 1986.

466

468

Dennis J. Cogan, Philadelphia, for appellant.

Elizabeth J. Chambers, Assistant District Attorney, Philadelphia, for Com., appellee.

Before OLSZEWSKI, HOFFMAN and ROBERTS, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for burglary and conspiracy. Appellant contends that (1) the trial court erred in denying his request for new counsel and (2) trial counsel was ineffective in failing to (a) object to the trial court's questioning of appellant; (b) object to the trial court's missing witness instruction; (c) object to the Commonwealth's introduction of hearsay evidence; and (d) call a police detective to impeach Commonwealth witnesses through the use of prior inconsistent statements. For the reasons that follow, we remand to the trial court for an

evidentiary hearing on three of appellant's ineffectiveness claims, and direct the trial court to file a supplement to its opinion addressing appellant's contention that his request for new counsel was improperly denied.

On August 1, 1980, Marion Geisz surprised two men as they were burglarizing her home. The two men fled through a side window. Geisz and some of her neighbors chased the men. Appellant was later arrested and charged with the burglary. Prior to his trial by jury, appellant requested that new counsel be appointed to represent him. This request was denied and appellant went to trial represented by an assistant public defender. At trial, the Commonwealth presented the testimony of several witnesses, including Geisz and her neighbor, both of whom identified appellant as one of the men they saw leaving through the side window of Geisz's home. Appellant testified on his own behalf, denying any involvement in the burglary, and stated that he was not the subject of the chase, but a participant in chasing the true offenders. On December 14, 1983, appellant was found guilty of burglary and criminal conspiracy. On November 13, 1985, appellant was sentenced to ten-to-twenty years imprisonment on the burglary charge, and five-to-ten years imprisonment on the conspiracy charge, sentences to run concurrently. This appeal followed.

Appellant first contends that the trial court erred in denying his request to appoint new counsel. The decision whether to appoint new counsel rests in the discretion of the trial court. *See Commonwealth v. Tyler*, 468 Pa. 193, 198, 360 A.2d 617, 619 (1976); *Commonwealth v. Bell*, 328 Pa.Superior Ct. 35, 47, 476 A.2d 439, 446 (1984). Although an indigent defendant is entitled to free counsel, he is not entitled to free counsel of his choice, *Commonwealth v. Tyler, supra* 468 Pa. at 197, 360 A.2d at 619, and he may reject appointed counsel only "for good cause shown." *Id.* (quoting *Commonwealth v. Johnson*, 428 Pa. 210, 213, 236 A.2d 805, 807 (1968)); *Commonwealth v. Bell, supra.* A "mere dissatisfaction" with appointed counsel is inadequate

to establish "good cause shown." *Commonwealth v. Bell, supra.* If the defendant can show that irreconcilable differences exist between his counsel and himself, however, a trial court's refusal to appoint new counsel is an abuse of discretion and the defendant is entitled to a new trial. *Commonwealth v. Tyler, supra* 468 Pa. at 197–98, 360 A.2d at 619; *Commonwealth v. Bell, supra.*

█ Although the lower court filed an opinion in this matter, it neither addressed this contention in its opinion nor indicated the place in the record where the reasons for its denial could be found. Pa.R.A.P. 1925(a) mandates that:

> Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

*Id.* The purpose of Rule 1925(b) is to provide the appellate court with the lower court's reasoning in support of its determination, thereby insuring meaningful appellate review. *See Commonwealth v. Mueller,* 341 Pa.Superior Ct. 273, 278, 491 A.2d 258, 261 (1985); *Commonwealth v. Coda,* 283 Pa.Superior Ct. 408, 411, 424 A.2d 529, 530–31 (1981). Here, we do not have the benefit of a discussion by the trial court of the reasons for its decision. Moreover, we have carefully reviewed the record and find conflicting evidence regarding whether irreconcilable differences existed between appellant and his trial counsel.[1] Because we find it difficult to determine whether the court abused its

---

1. For example, appellant testified, that among other differences, his attorney refused to ask questions he wanted her to ask, N.T. December 13, 1983 at 11, 18, refused to let him see discovery materials, particularly the police report, *id.* at 21–22, and that "all we [appellant and his attorney] do is argue.... We haven't gotten along since we met." N.T. December 12, 1983 at 46, 51. Appellant's attorney corroborated their differences, stating that: "I would have asked to be removed. There was an inexcusable breakdown in how he has treated me, et cetera." N.T. December 13, 1983 at 12. Conversely, appellant was aware that his attorney had a great deal of experience, *id.* at 16, and his attorney stated that she was familiar with the case and was

discretion absent its express findings on the issue, we are compelled to remand to the trial court with a direction to supplement its opinion with its reasons for denying appellant's request.

 Appellant next raises four claims of ineffective assistance of trial counsel. In evaluating ineffective assistance of counsel claims, a reviewing court must first determine whether the issues underlying the claim are of arguable merit. *Commonwealth v. Pierce*, 345 Pa.Superior Ct. 324, 327, 498 A.2d 423, 425 (1985) (en banc), *allocatur granted* 510 Pa. 244, 507 A.2d 368 (1986). If the claim has merit, the court must then determine "whether the course chosen by counsel had some reasonable basis aimed at promoting the defendant's interests." *Id.* When a claim has arguable merit, and there has been no evidentiary hearing below to determine if a reasonable basis exists for counsel's actions, this court will remand for an evidentiary hearing. *Commonwealth v. Spotts*, 341 Pa.Superior Ct. 31, 33, 491 A.2d 132, 134 (1985). Additionally, appellant must show that counsel's ineffectiveness so prejudiced his case that he was deprived of a fair trial. *Commonwealth v. Pierce, supra* 345 Pa.Superior Ct. at 329, 498 A.2d at 426. In this analysis, counsel is presumed to be effective, *Commonwealth v. Norris*, 305 Pa.Superior Ct. 206, 210, 451 A.2d 494, 496 (1982), and appellant bears the burden of establishing that trial counsel was ineffective. *Commonwealth v. Jones*, 298 Pa.Superior Ct. 199, 205, 444 A.2d 729, 732 (1982).

Here, there has been no evidentiary hearing on appellant's ineffectiveness claims. We must therefore examine each of appellant's claims, determine whether it has arguable merit and has prejudiced appellant, and, if so, remand for an evidentiary hearing to determine whether counsel had a reasonable basis for her actions.

Appellant first argues that trial counsel was ineffective for failing to object to the court's extended questioning of

prepared to go to trial. N.T. December 12, 1983 at 47. Moreover, appellant admitted that he had been interviewed at length by somebody from the defender's office. *Id.* at 49.

appellant. In particular, appellant maintains that the court assumed the prosecutor's role by continuously questioning him with the result that the jury concluded that the court believed appellant to be guilty. A trial judge has the right and sometimes the duty to examine a witness for the purpose of clarifying or making more certain important points. *See Commonwealth v. Seabrook*, 475 Pa. 38, 44, 379 A.2d 564, 567 (1977) (quoting *Commonwealth v. Myma*, 278 Pa. 505, 507–08, 123 A. 486, 487 (1924)); *Commonwealth v. Miller*, 234 Pa.Superior Ct. 146, 154, 339 A.2d 573, 578 (1975), *aff'd* 469 Pa. 24, 364 A.2d 886 (1976). The questioning, however, should not show bias or feeling nor should it be unduly protracted. *Commonwealth v. Seabrook, supra* 475 Pa. at 45, 379 A.2d at 567 (quoting *Commonwealth v. Watts*, 358 Pa. 92, 96, 56 A.2d 81, 83 (1948)); *Commonwealth v. Green*, 315 Pa.Superior Ct. 564, 578, 462 A.2d 736, 742 (1983). "A major reason for the restrictions on a trial judge's questioning is the concern that his conduct may lead the jury to conclude that the court has made up its mind on the question of the defendant's guilt, and that the jury should follow the judge's opinion." *Commonwealth v. Seabrook, supra*. It is therefore "better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court." *Commonwealth v. Seabrook, supra* 475 Pa. at 44, 379 A.2d at 567 (quoting *Commonwealth v. Myma, supra* ). Ultimately, "the question is whether the trial court has abused its discretion" in interrogating the witness. *Commonwealth v. Seabrook, supra*, 475 Pa. at 45, 379 A.2d at 567.

Here, the lower court did not address this argument in its opinion. A review of the record reveals, however, that the trial court engaged in an extensive cross-examination of appellant in front of the jury. Half of the court's questions were asked during the Commonwealth's cross-examination of appellant and were obviously designed to clarify testimony. *See* N.T. December 14, 1983 at 132, 138, 141, 143. The court's other questions were asked after the Commonwealth finished cross-examining appellant. *See*

*id.* at 153–56. We have carefully reviewed the court's examination of appellant and find no error. Appellant's testimony in response to the court's questioning was consistent with his testimony on direct examination. Indeed, the examination by the court provided the jury with a concise summary of appellant's testimony. Moreover, the questions did not display bias or feeling on the court's part. On these facts, we conclude that, although the court's questioning was somewhat longer than desired, it did not abuse its discretion. Accordingly, appellant's claim that trial counsel was ineffective for failing to object to the questions has no merit, and we need not remand for an evidentiary hearing.[2]

Appellant next argues that trial counsel was ineffective for failing to object to the court's missing witness

2. Appellant also contends that his trial counsel was ineffective for failing to object when both the court and the prosecutor commented on his invocation of his rights to silence and to counsel. In support of this contention, appellant cites the following two exchanges:

THE COURT: *I want to make sure I understand your testimony. When you were arrested, you told the police that you were there with your wife looking for an apartment?*

THE WITNESS [Appellant]: *I tried to tell the guy with the gun: "Go right around the corner, my wife is around there." He kept me against the wall.*

\* \* \* \* \* \*

BY MS. WRIGHT [ADA]: *Did you tell Lieutenant Geisz this when he came in to see you?*

THE WITNESS: *I wasn't saying nothing no more. I was smacked around and all. I told them that I wanted to see a lawyer.* N.T. December 14, 1983 at 148, 149.

Reference to an accused's silence or his request for counsel at the time of arrest is a violation of the accused's fifth amendment rights and constitutes reversible error. *Commonwealth v. Gwaltney,* 497 Pa. 505, 510, 442 A.2d 236, 239 (1982); *Commonwealth v. Haideman,* 449 Pa. 367, 370, 296 A.2d 765, 766 (1972). If the accused himself opens the door to what otherwise might be objectionable testimony, however, "the Commonwealth may probe further to determine the veracity of the trial statement." *Commonwealth v. Bey,* 294 Pa.Superior Ct. 229, 236, 439 A.2d 1175, 1178 (1982).

Here, appellant testified on direct examination that, after he was arrested and taken to the police station, he "tried to explain to [the detective who handled the case] what had happened...." N.T. December 14, 1983 at 128. Later, on cross-examination, the following exchange occurred:

Q [by Ms. Wright]: *They took you up to Northeast Detectives?*

instruction. Generally, when an accused raises an alibi defense and names a person who can support that defense, yet fails to call that person as a witness, the jury may infer that the absent witness's testimony would have been unfavorable to the accused. *See Commonwealth v. Leonard,* 499 Pa. 357, 364–65, 453 A.2d 587, 590 (1982). If the missing witness is the spouse of the accused, however, such an inference is impermissible. *Commonwealth v. Moore,* 453 Pa. 302, 305, 309 A.2d 569, 570 (1973). The rationale for the latter rule is that the "evidentiary inference comes directly into conflict with the common law and the Pennsylvania statutory rule on incompetency of spouses." *Id.,* 453 Pa. at 306, 309 A.2d at 570. To allow the inference to operate would erode completely the spousal protection. *Id.,* 453 Pa. at 307, 309 A.2d at 571.

Here, the trial court instructed the jury as follows:

As I recall the defendant's testimony, he testified that he accompanied his wife to the area of the crime, and she went into an apartment house to make some kind of an arrangement for the purpose of viewing and/or renting an apartment. His wife was available as a witness for trial, but did not testify.

A [by appellant]: Yeah, they took me to the police station.
Q: The assigned detective beat you up, and Lieutenant Geisz and his wife—
A: Well, the detective asked me questions first: "Who was the other guy?"
I just explained to him that my wife was up there inside the apartment building. He said, "I don't want to hear that bullshit; just tell me who this other guy was. This woman's father is a judge. If you don't start talking, you're in big trouble."

*Id.* at 137. We note that the prosecutor did not ask appellant whether he told the police anything; instead, appellant volunteered the information. We are satisfied that the later questions posed by the court and the prosecutor were attempts to probe deeper into appellant's own testimony regarding what he told the detective at the police station. Because appellant opened the door to these questions with his own testimony, the questions are not impermissible comments on his exercise of his fifth amendment rights. Accordingly, appellant's claim that trial counsel was ineffective for failing to object to the questions is meritless, and we need not remand for an evidentiary hearing.

476

It is a principle of law that if a person is a potential witness—and one would expect that witness to give favorable testimony for the defendant—and it was determined that that person would not be called as a witness, you, the jury, may infer that had the witness been called, she would have given testimony unfavorable to the defendant.

N.T. December 14, 1983 at 206. This instruction was clearly erroneous, as the trial court later recognized at sentencing. *See* N.T. November 13, 1985 at 3. Thus, appellant's claim that trial counsel was ineffective in failing to object to the instruction is meritorious.

 The Commonwealth nevertheless contends that, even if the instruction was erroneous, it was constitutionally harmless in light of the overwhelming evidence of appellant's guilt. Couched in ineffectiveness terms, the Commonwealth's claim is that appellant was not prejudiced by the instruction, and thus trial counsel was not ineffective for failing to object.[3] An error, whether involving state law or federal constitutional law, "can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story,* 476 Pa. 391, 405–06, 383 A.2d 155, 162 (1978). An error is harmless only if the appellate court determines that the error "could not have contributed to the verdict." *Id.,* 476 Pa. at 409, 383 A.2d at 164. "Whenever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." *Id.* (citations omitted). An error may be harmless if the "properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Id.,* 476 Pa. at 412, 383 A.2d at 166. This analysis is closely tied to the facts of the case and requires an examination of the entire record. *Id.,* 476

**3.** In *Commonwealth v. Pierce, supra* this Court, sitting en banc, held that the standard for determining whether counsel's ineffectiveness prejudiced her client is whether the error is harmless beyond a reasonable doubt. 345 Pa.Superior Ct. at 335, 498 A.2d at 429.

Pa. at 413 n. 24, 383 A.2d at 166 n. 24. For an error to be harmless because of overwhelming evidence, "the untainted evidence relied upon must be uncontradicted." *Id.*, 476 Pa. at 413, 383 A.2d at 166 (footnote omitted). "Unless the evidence is uncontradicted a fair minded juror may well choose to credit the defendant's, rather than the Commonwealth's evidence." *Id.*, 476 Pa. at 415–16, 383 A.2d at 167. The requirement that evidence be uncontradicted derives from the function of appellate courts: "An appellate court is ill equipped to resolve conflicts in the evidence or make findings of fact." *Id.*, 476 Pa. at 416, 383 A.2d at 168. Were the appellate court to resolve such conflicts, it would usurp the fact-finder's function. *Id.* Accordingly, courts have been reluctant to find errors harmless on the basis of overwhelming evidence. *Id.*, 476 Pa. at 413, 383 A.2d at 166.

■ Here, a review of the record convinces us that the erroneous missing witness instruction was not harmless beyond a reasonable doubt. The Commonwealth relied primarily on the testimony of two witnesses, Marion Geisz and Charles Wolpert, each of whom identified appellant as one of the men seen leaving the scene of the burglary. Both witnesses, along with other neighbors, chased the men, and appellant was subsequently arrested.[4] Appellant took the stand in his own behalf, and disputed this version of events. Appellant's theory was mistaken identity. Appellant testified that he was sitting in his car when a man ran by and dropped a radio. N.T. December 14, 1983 at 126. Appellant picked the radio up and ran after the man. *Id.* Shortly thereafter, Mr. Wolpert drove up in a car, pulled a gun on appellant and forced him to stop. *Id.* at 126–27. Appellant was later arrested. In addition to presenting his mistaken identity theory, appellant challenged Wolpert's identification. On cross-examination, Wolpert admitted that he did not have his glasses on when he saw the men leaving the scene, N.T. December 13, 1983 at 86, and that he had

---

**4.** Although the Commonwealth presented other witnesses, none claimed to have seen appellant at the scene of the burglary, and thus their testimony contributed nothing to the central issue of identity.

discussed the case with Mrs. Geisz and other neighbors.[5] *Id.* at 85. Thus, even if the Commonwealth's evidence was overwhelming, it was not uncontradicted.

The jury was left to choose between the two versions of the burglary, chase, and arrest. In these circumstances, and particularly because appellant's testimony was uncorroborated by other defense witnesses, the missing witness instruction was especially damaging, as it gave the jury a presumptive basis for discrediting appellant's testimony. Because the Commonwealth's evidence was not uncontradicted, and because we believe that there is a reasonable possibility that the jury may have relied on the instruction in choosing to disbelieve appellant's testimony, the error was not harmless beyond a reasonable doubt. We thus conclude that appellant was prejudiced by his counsel's failure to object to the instruction, and accordingly, remand for an evidentiary hearing on the question whether trial counsel had a reasonable basis for failing to object.

Appellant next argues that trial counsel was ineffective for failing to object to the Commonwealth's introduction of inadmissible hearsay evidence. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Cassidy,* 315 Pa.Superior Ct. 429, 433, 462 A.2d 270, 272 (1983).

> When a statement is offered in evidence to prove the truth of a fact asserted therein, the speaker's credit and the circumstances of the utterance become basic to a proper evaluation of the statement. Therefore, the hearsay rule generally excludes such evidence unless the speaker is on hand to personally testify.

*Commonwealth v. DiSilvio,* 232 Pa.Superior Ct. 386, 391, 335 A.2d 785, 787–88 (1975). The rationale behind the rule

**5.** The inference that appellant apparently would draw from this last fact is that Geisz and Wolpert manufactured their identification testimony only after appellant was arrested, when they learned of his prior record. *See* N.T. Motion to Suppress, December 13, 1983 at 44. Appellant claims that Wolpert's testimony was further undercut by an inconsistent statement that he gave to police, and that trial counsel was ineffective in failing to call the police detective to introduce evidence of the inconsistency. *See infra* at 483–484.

extends to indirect as well as direct attempts to introduce out-of-court statements. *Commonwealth v. Farris,* 251 Pa.Superior Ct. 277, 282, 380 A.2d 486, 489 (1977). Thus, "[i]f the apparent purpose of offered testimony is to use an out-of-court statement to evidence the truth of facts stated therein, the hearsay objection cannot be obviated by eliciting the purport of the statements in indirect form." *Id.,* 251 Pa.Superior Ct. at 282–83, 380 A.2d at 489 (quoting *McCormick on Evidence* § 249, at 593–94 (Cleary ed. 1972)).

Here, the Commonwealth called Officer Nieckoski, who testified that on August 1, 1980, he received a radio call, on the basis of which he proceeded to the area where appellant was being chased by another officer. N.T. December 14, 1983 at 160, 162, 165. When the Commonwealth asked the witness, "[w]hat was the substance of that [radio] call," appellant timely objected, and his hearsay objection was sustained. *Id.* at 160. At the ensuing sidebar conference, the Commonwealth made clear that the purpose of the question was to "specifically rebut" appellant's testimony on direct. *Id.* at 161. Appellant had testified that, after Wolpert pulled a gun on him, he told an onlooker to call the police, because Wolpert had a gun but was not a police officer. *Id.* at 127–28. Nieckoski's testimony would show that the radio call reporting the incident made no mention of a gun. *Id.* at 161. The court, recognizing that testimony regarding the substance of the radio call would be inadmissible hearsay, ruled that the Commonwealth could not ask about the substance of the call, but could ask:

When you arrived there, were you looking for a gun?

*Id.* Despite the court's instruction, the Commonwealth later asked:

During the course of this incident, did you ever receive information to be on the lookout for a man with a gun?

A: Not that I recall, no, ma'am.

*Id.* at 167.

We have no doubt that the purpose of this question was to show that appellant was lying when he testified

that he told an onlooker to call the police. Indeed, information that the officer was not told to be on the lookout for a gun was of no possible relevance—except to show that appellant lied on direct examination.[6] The issue then becomes whether the form of the question saves it from the hearsay proscription. We think not, as the case falls squarely within the teaching of *Commonwealth v. Farris, supra.* Had the officer testified that: "I received a radio call reporting a burglary and chase and that call made no mention of a man with a gun," the testimony would clearly have been hearsay: it would have been a negative assertion by someone not in court (the radio dispatcher), offered for its truth (that there was no report of a man with a gun), and "thus depending for its value upon the credibility of the out-of-court asserter." *See id.*, 251 Pa.Superior Ct. at 282, 380 A.2d at 489. The out-of-court asserter did not testify, and therefore was not subject to cross-examination to determine, for example, who reported the incident to the police. The Commonwealth cannot avoid the proscription against such testimony by having the officer "testify obliquely rather than flat-out." *Id.* Appellant's contention that his trial counsel was ineffective for failing to object to the question, therefore, is meritorious. Moreover, the question

**6.** The Commonwealth concedes as much in its brief: "the officer's testimony was offered to show only whether such information had been given to police in order to rebut defendant's claim that he had sought such aid." Brief for Commonwealth at 13. Of course, the officer's own observations regarding whether he saw anybody with a gun at the scene would be admissible, and would tend to impeach appellant's testimony. And, indeed, the officer did testify to his own observations as follows:

Q: Do you remember seeing any civilian with a gun?
A: No.
THE COURT: When the defendant was apprehended, if there was a civilian holding a gun on him, do you think you would have seen it?
MS. PURNELL: Objection.
THE COURT: Overruled.
THE WITNESS: Oh, yeah.

N.T. December 13, 1983 at 167. The contrast between the effect of the legitimate question (to introduce the witness's on-scene observations) and the disputed question (to introduce information the officer received from out-of-court sources) more clearly demonstrates that the latter question was designed solely to introduce hearsay.

and answer obviously prejudiced appellant. Again, the evidence of appellant's guilt, even if overwhelming, was contradicted by appellant's testimony and his cross-examination of Wolpert. The hearsay evidence introduced above, like the missing witness instruction, provided the jury with an improper basis to discredit appellant's version of events. Because there is a reasonable possibility that the evidence could have contributed to the jury's verdict, the error was not harmless beyond a reasonable doubt. *See Commonwealth v. Story, supra.* Accordingly, we remand to the trial court for an evidentiary hearing on the question whether trial counsel had a reasonable basis for failing to object.

Appellant finally argues that trial counsel was ineffective for failing to impeach a Commonwealth witness through use of a prior inconsistent statement. In particular, appellant maintains that trial counsel should have called the detective assigned to the case. Based upon the police report that he prepared, the detective could then have testified that Mr. Wolpert made a statement to him on the day of the burglary that conflicted with Wolpert's trial testimony.

> In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel.

*Commonwealth v. Abney,* 465 Pa. 304, 309, 350 A.2d 407, 409 (1976) (quoting *Commonwealth v. Twiggs,* 460 Pa. 105, 111, 331 A.2d 440, 443 (1975)). *See also Commonwealth v. Guerrisi,* 297 Pa.Superior Ct. 245, 250, 443 A.2d 818, 821 (1982). Although *Abney* and *Twiggs* involved the failure to call known eyewitnesses who could provide favorable testimony, the principle applies to favorable demonstrative evidence, documentary evidence, and expert testimony. *Commonwealth v. Guerrisi, supra.* Thus, where credibility is a crucial issue, a contention that counsel failed to employ

evidence which "would have been helpful ... to impeach the Commonwealth's witnesses and was available to counsel at the time of trial" possesses arguable merit. *Id.*, 297 Pa.Superior Ct. at 251, 443 A.2d at 821.

Here, a review of the record convinces us both that introduction of Wolpert's prior statement would have helped to impeach him and would have corroborated appellant's testimony, and that trial counsel was aware both of the existence of this statement and of its importance. At trial, Wolpert testified that, after seeing appellant jump out of Geisz's window, he chased appellant on foot, and was present when appellant was arrested. N.T. December 13, 1983 at 81, 83–84. On cross-examination, Wolpert was asked whether he had in fact entered the car of another neighbor, Sullivan, and pursued appellant while in the car. *Id.* at 93–94. Wolpert answered that he did not get into Sullivan's car, and that he did not remember telling the detective who interviewed him that he did. *Id.* at 94. This testimony contradicted appellant's version of his arrest. Appellant testified that Wolpert and a second man pulled up alongside him in a car, as appellant was chasing the man who dropped the radio. N.T. December 14, 1983 at 126. Wolpert then pulled a gun on appellant and told him to put his hands up against the wall. *Id.* at 126–27. The police arrived a few minutes later. *Id.* at 128. In the Police Investigation Report, the assigned detective wrote that:

> [Wolpert] stated that during the chase of this male another neighbor identified as John Sullivan ..., who was waterin[g] his lawn at the time, seeing the pursuit jumped into his auto chasing the male and picking up Volpert [sic] in his auto and he and Sullivan cornered the male ... as uniformed police personnel arrived with a plain clothes Policeman and placed the male under arrest....
>
> . . . .

Police Investigation Report August 1, 1980 at 2. This statement would have impeached Wolpert's testimony as to the particulars of the chase and arrest, and would have corroborated appellant's version.

Trial counsel was aware of the prior statement, as evidenced by her attempts to get Wolpert to admit that he told the police that he had chased appellant while in Sullivan's car. When Wolpert said he did not remember making the statement to police, however, counsel made no further attempt to introduce the evidence. Because credibility was crucial here, this evidence could have caused the jury to disbelieve the Commonwealth witnesses and to believe appellant's theory that he was mistaken for the true culprit. *See Commonwealth v. Guerrisi, supra.* We thus conclude that appellant's claim that trial counsel was ineffective for failing to call the detective to testify to Wolpert's prior statement is meritorious. Moreover, appellant was clearly prejudiced by this failure, because introduction of the evidence would have given the jury a basis to credit appellant's version of events independent of his trial testimony. Because there is a reasonable possibility that the evidence could have caused the jury to acquit appellant, the error was not harmless beyond a reasonable doubt. *See Commonwealth v. Story, supra.* Accordingly, we remand to the trial court for an evidentiary hearing on the question whether counsel had a reasonable basis for failing to introduce evidence of Wolpert's prior statement.[7]

7. Appellant also argues that counsel was ineffective for failing to introduce evidence of Mrs. Geisz's statement to the detective, which he alleges was inconsistent with her trial testimony. We find this contention to be meritless. At trial, Geisz testified as follows:

Q: When he came out of the window, where did he go?
A: Ran across the yard, and over the little fence. Then, across another little yard, through this privacy screen, and across the next yard toward Emerson Street.
Q: *At that point in time,* had you lost sight of them at all?
A: No.

N.T. December 13, 1983 at 45 (emphasis added). The police report states that Geisz "lost the two males" just prior to their apprehension by police. Police Investigation Report August 1, 1980 at 1. These statements are not inconsistent. At trial, the witness was never asked whether she kept appellant in sight during the entire chase. Because the two statements are not inconsistent, appellant's claim that trial counsel was ineffective for failing to introduce evidence of the prior statement is meritless, and we need not remand for an evidentiary hearing.

For the foregoing reasons, we affirm in part and remand for an evidentiary hearing on trial counsel's effectiveness and direct the trial court to file a supplement to its opinion addressing appellant's contention that his request for new counsel was improperly denied.

Affirmed in part and remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

ROBERTS, J., concurs in the result.