J-S06025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HERM D. TUGGLES | : | |
| | : | |
| Appellant | : | No. 2392 EDA 2017 |
| | : | |

Appeal from the PCRA Order June 9, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012119-2014

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MARCH 13, 2018**

Herm D. Tuggles appeals from the order dismissing his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Tuggles was admitted to the Albert Einstein Medical Center emergency department on the night of his arrest and argues his counsel was ineffective for failing to cross-examine the testifying police officers with statements contained in his medical records. We affirm.

Following his September 26, 2014 arrest, Tuggles was charged with persons not to possess firearms, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia.[1] At Tuggles' bench trial on November 20, 2015, Police Officers Fred MacConnell and Justin O'Brian testified that while on patrol at approximately 8:24 p.m. on

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

September 26, 2014, they observed Tuggles pacing back and forth on a street in Philadelphia, Pennsylvania. N.T., 11/20/15, at 11-12, 43. They observed Tuggles remove a large black handgun from his waistband and place it in the trunk of a black Chevy Impala. *Id.* at 12-13, 43. Officer MacConnell testified that he was was about a half a block, or 30 to 40 yards, from Tuggles, with street lights on, when he saw Tuggles place a gun in the trunk. *Id.* at 13-14. He stated that he had a back and side view of Tuggles, and saw him pacing for less than one minute. *Id.* at 13, 29. Similarly, Officer O'Brian testified he was about 40 yards from Tuggles when he observed Tuggles place the gun in the trunk. *Id.* at 46.

According to both officers' testimony, Tuggles then proceeded to get into the passenger seat of the vehicle, and the driver drove away. *Id.* at 12, 43. The officers pulled the vehicle over, and Tuggles got out and fled on foot. *Id.* at 12, 44. Officer MacConnell put a description over the police radio for "a black male, approximately 5-4, 5-6 wearing a gray hoodie and gray sweatpants." *Id.* at 12, 19. He recovered a loaded black Smith and Wesson 44-magnum handgun from the trunk of the Impala. *Id.* at 19.

Officer O'Brian pursued Tuggles on foot through a breezeway. *Id.* at 44. Officer O'Brian then backed out of the breezeway and set up a perimeter, as he believed Tuggles could get out only if he went "through a door and he [came] out the front." *Id.* at 44. Officer O'Brian and Lieutenant Hoyt[2] surveyed

---

[2] Lieutenant Hoyt's first name is not in the record.

the area in an unmarked vehicle. *Id.* After a "good half hour," Officer O'Brian received a call and proceeded to an area approximately "three very short blocks" away where saw Tuggles get into a white Nissan Maxima and drive away. *Id.* at 44-45, 50, 52. Officer O'Brian and Lieutenant Hoyt stopped the vehicle and Officer O'Brian identified Tuggles. *Id.* at 52. Officer MacConnell testified that about 45 minutes after the initial encounter, he arrived at the location of the arrest and identified Tuggles, who was in a marked police car. *Id.* at 20-21, 26.

Officer MacConnell testified that when Tuggles was in the police car, he was still wearing gray pants and a gray hoodie. *Id.* at 22. Further, Officer MacConnell testified that Tuggles had dirt and leaves on him when he identified Tuggles, *id.* at 21, and Officer O'Brien testified Tuggles was covered with mud and dog feces when arrested, *id.* at 51. Officer O'Brian testified that when transporting Tuggles to the police station, Tuggles stated to Officer O'Brian: "[P]lease don't put that gun in my waistband." *Id.* at 53.

On cross-examination, both officers acknowledged that the police forms stated an arrest occurred at either 11:10 p.m. or 11:15 p.m., which would have been almost three hours after the initial encounter. *Id.* at 24-26, 56. The officers were unsure why the forms stated 11:10 p.m. and 11:15 p.m. as the arrest time, and confirmed that the arrest occurred about 40 to 45 minutes after the initial encounter. *Id.* at 55-57, 24-26. Officer O'Brian stated that he arrested Tuggles about two and a half miles from the location where he initially saw him put the gun in the car, *id.* at 66, and Officer MacConnell testified that

- 3 -

he identified Tuggles about two and a half miles from the location of the initial observation, *id.* at 26. In addition, Officer MacConnell acknowledged on cross examination that the police paperwork stated Tuggles was wearing a white t-shirt, not a gray hoodie, when arrested and that the paperwork does not mention leaves, brush, or debris, *Id.* at 36-37, and Officer O'Brian testified the police paperwork does not mention mud, leaves, or dirt, *id.* at 58.

In his closing argument, Tuggles' counsel argued that this was a "misidentification case." N.T., 11/20/15, at 72. He noted the conditions that existed when the officers first observed Tuggles and inconsistencies in the record and testimony, including that the police records state the arrest occurred three hours after the initial encounter, not 40 to 45 minutes after as stated by the police officers *id.* at 74-75, and when Tuggles was arrested he was wearing a white t-shirt, not a gray hoodie, *id.* at 75. He further argued that Tuggles would not have said "please don't place that gun in my waistband," *id.* at 77, noting "[h]ow many times have you heard an officer use the word waistband?" and "[do] you think Mr. Tuggles talks like please don't place this gun in my waistband?" *id.* at 78.

No evidence or testimony at trial mentioned that Tuggles was taken to the Albert Einstein Medical Center emergency room on the night of his arrest, and Tuggles' counsel did not cross-examine the police officers with any statements contained in the medical records from the emergency room.

The trial court found Tuggles guilty of the above-referenced offenses. The trial court sentenced Tuggles on January 14, 2016 to five to ten years'

- 4 -

imprisonment for the conviction for persons not possess firearms, and three to six months' imprisonment and seven years' probation for the firearms not to be carried conviction. The court ordered that the sentences run concurrent and imposed no further penalty for the conviction for carrying firearms on public streets or public property in Philadelphia.

On January 22, 2016, Tuggles, now represented by new counsel, filed a motion for new trial, arguing Tuggles was taken to Albert Einstein Medical Center at 11:39 p.m. following his arrest and trial counsel erred by not using statements from the medical records to challenge the credibility of Officers MacConnell and O'Brian.[3] On December 13, 2016, the trial court denied the motion.

On January 11, 2017, Tuggles filed a PCRA petition, alleging that his counsel was ineffective for failing to use the medical records to challenge the

---

[3] On January 20, 2016, Tuggles' trial counsel filed a post-sentence motion, arguing the verdict was against the weight of the evidence and the trial court abused its discretion when sentencing him. On January 25, 2016, the trial court denied this motion. On January 22, 2016, new counsel filed the post-trial motion. Although the record does not contain a motion to vacate the post-sentence motion, the trial court record contains an order granting a "motion to vacate post sentence motion." Order, filed 2/19/16. Further, the record contains orders scheduling a sentencing hearing, *see, e.g.,* Writ Order, filed 2/19/16. The trial court noted that "I would concede with you that the quarter session's file and the orders that I have are ambiguous at best and a mess at wors[t]." N.T., 12/9/16, at 24.

Here, Tuggles was sentenced on January 14, 2016, and the trial court did not vacate this order. Regardless of whether his judgment of sentence became final 30 days after sentencing, 30 days after the order denying the post-sentence motion filed by his trial counsel, or 30 days after the order denying the post-trial motion filed by PCRA counsel, his PCRA petition is timely.

credibility of the police officers. Tuggles claimed counsel should have used statements from the medical records to challenge the credibility of Officers MacConnell and O'Brian, including that "per police [patient] was evading arrest and fell while running, abrasions noticed to left hand and left leg" and that the onset was "just prior to arrival." PCRA Pet., filed 1/11/17, at ¶ 20. He attached medical records to the PCRA petition, with highlighted portions, including: (1) "[p]er the police, the patient was running from the police while armed. He fell to the ground sustaining the above injuries. He denies obtaining any GSW during the fall. He was brought to the ED in police custody" and (2) patient "is a 22-year old male that presents to the emergency department in police custody after he was allegedly running from police while holding a gun on the front of his pants. The patient fell and sustained a contusion to his left groin. Small abrasion to the hand." PCRA Pet., filed 1/11/17, at Ex. A, at 6, 8.

The PCRA court held an evidentiary hearing. Trial counsel, who had 17 years of criminal-law experience, testified that he requested Tuggles' medical records from the night of the arrest to determine whether there was a difference "in the police statements at trial compared to what was in the medical records." N.T., 6/9/17, at 12. He said he did not use the records at trial because the "only defense that would totally exonerate Mr. Tuggles would be an [identification] defense," and, because the records indicated Tuggles was hurt during a chase, it would give proof that he was the person who ran from, and was chased by, the police. *Id.* at 14. In addition, he did not use the records because the police officers who took Tuggles to the hospital were not

the police officers involved in the arrest. *Id.* at 14-15. Counsel testified that he did not request a transportation form during discovery. Further, he did not provide a copy of the medical records to the Commonwealth because "the last thing I wanted them to see was that he was – he sustained injuries during a chase." *Id.* at 18. In addition, Officer MacConnell testified at the PCRA hearing, stating that neither he nor Officer O'Brian took Tuggles to the hospital. *Id.* at 45-46.

On June 9, 2017, the PCRA court denied the petition. Tuggles filed a timely notice of appeal.[4]

Tuggles raises the following issue on appeal:

> I. Whether the PCRA court erred in denying [Tuggles' PCRA] Petition because trial counsel was ineffective in failing to introduce medical records which would have impeached the police testimony introduced at trial.

Tuggles' Br. at 6 (unpaginated).

Tuggles claims his trial counsel was ineffective for failing to challenge the police officers' credibility with the statements from the medical records. He argues that (1) his issue has arguable merit because the documents would have impeached the testimony of Commonwealth witnesses; (2) counsel had no reasonable basis for not using the records, claiming the identification defense was not viable, particularly due to Tuggles' confession; and (3) had

_____

[4] After the PCRA court denied the petition, it permitted PCRA counsel to withdraw. Tuggles has new counsel on appeal.

counsel used the records, there is a reasonable probability that the outcome of the trial would have been different.

Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011).

To prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." ***Ousley***, 21 A.3d at 1244 (quoting ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa.Super. 2010)). "The failure to prove any one of the three [ineffectiveness] prongs results in the failure of petitioner's claim." ***Id.*** (quoting ***Rivera***, 10 A.3d at 1279).

"If counsel's chosen course had some reasonable basis, the inquiry ends and counsel's assistance is deemed effective." ***Commonwealth v. Williams***, 899 A.2d 1060, 1064 (Pa. 2006). "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" ***Commonwealth v. Cox***, 983 A.2d 666, 678 (Pa. 2009) (quoting ***Williams***, 899 A.2d at 1064).

Here, the PCRA court concluded that Tuggles' ineffectiveness claim lacked merit because trial counsel had a reasonable basis for not using the medical records since the medical records would have served to corroborate police testimony that they chased Tuggles. It concluded that:

> [I]n this case, the way [trial counsel] tried it, in my view, was more than reasonable given his experience, extensive experience, in representing clients, his evaluation of the case and the merits of an [identification] defense, and given the unique facts of the case, which include that it was dark out, there were streetlights there, but the observation was 120 feet away, less than a minute, more than two hours later is where he was ultimately arrested and two and a half miles away, that those, in his view, made a good [identification] case or [identification] defense. And, thus, introducing [Tuggles'] medical records that would confirm that, in fact, it was Mr. Tuggles who was running from the police, per the paperwork, would have vitiated that [identification] defense, in my view [that] was [trial counsel's] call to make and within the realm of reason [of an experienced criminal defense attorney].

Trial Court Opinion, filed Oct. 3, 2017, at 6 (quoting N.T., 6/9/17, at 72) (some alterations in original).[5]

We conclude the trial court's conclusion is supported by the record and it did not err in finding the ineffectiveness claim fails because counsel had a reasonable basis for not challenging the officers' credibility with the medical records.

---

[5] Further, trial counsel addressed Tuggles' statement during closing argument, arguing that Tuggles would not have said "please don't put the gun in my waistband." N.T., 11/20/15, at 77-78.

Because we conclude the court did not err in finding counsel had a reasonable basis for his trial strategy, we need not address the arguable merit and prejudice prongs of the ineffectiveness claims. **See Ousley**, 21 A.3d at 1244. Further, we note the cases relied on by Tuggles are distinguishable. In **Commonwealth v. Whiting**, 517 A.2d 1327, 1336 (Pa.Super. 1986), this Court found counsel ineffective where he did not question a detective about a statement in a police report that the detective prepared that would have impeached a Commonwealth witness and corroborated the defendant's testimony. In **Commonwealth v. Bolden**, 534 A.2d 456, 460 (Pa. 1987), the Pennsylvania Supreme Court concluded trial counsel was ineffective where, due to an "inadvertent oversight," counsel failed to question a police officer with a police report prepared by the officer which contained a version of events consistent with the defendant's alibi witness's testimony and inconsistent with the officer's trial testimony. Here, the testifying officers did not make the statements included in the medical records, or prepare the report containing the statement. Further, unlike counsel in **Bolden**, Tuggles' counsel had a strategic reason for not using the statements from the medical records; the failure to question regarding the medical records was not "inadvertent."

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/18