**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARK ALLEN BIRD | : | |
| | : | |
| Appellant | : | No. 1744 MDA 2023 |

Appeal from the PCRA Order Entered December 19, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000238-2020

BEFORE: PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: AUGUST 21, 2024**

Mark Allen Bird appeals from the order denying his first timely petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–46. We affirm.

The pertinent facts and procedural history may be summarized as follows: On August 6, 2019, Detective Tyson Havens of the Lycoming County Narcotics Enforcement Unit ("NEU") met with Joshua Feigles regarding whether Feigles would serve as a confidential informant. At that time, Feigles had a felony burglary charge pending against him. Feigles informed Detective Havens that he could purchase methamphetamines from Bird and Feigles arranged a purchase of a quantity of the drug for $100.00.

On August 8, 2019, in preparation for the controlled buy, other NEU members traveled to the vicinity of Bird's residence in South Willamsport. Bird

and his wife lived there along with Harry Delong, the owner of the home. Detective Havens met Feigles, and Feigles was stripped searched. Detective Havens then had Feigles use his cell phone to contact Bird and confirm the transaction. Bird responded, confirmed the sale, and asked Feigles to pick up three packs of cigarettes, with the cost of the cigarettes being deducted from the $100.00 drug payment.

Before driving to Bird's residence, Detective Havens drove to a local gas station. He and Feigles entered the store and purchased the cigarettes. Detective Havens equipped Feigles with an audio and video recording device. Detective Havens instructed Feigles to put the device in his pocket before entering the residence. Detective Havens then transported Feigles to a location near Bird's address. Feigles then walked toward the residence.

Detective Jonathan Rachael was one of the members of the NEU who positioned himself to provide additional video surveillance. While at that location, Detective Rachael observed a man pull up in a black pickup truck and walk toward the residence about five minutes before the drug transaction occurred. This man was later identified as Delong, an individual known to the NEU as a drug user, but not known to be a "dealer of drugs." A few minutes later, Detective Rachael observed Bird come out to the sidewalk looking distraught and pacing up and down. The detective's video surveillance also recorded Bird and Feigles meeting on the sidewalk. Thereafter, the two men entered the residence.

Although surveillance video by the NEU members captured Bird and Feigles at various times, Feigles put the audio/visual device in his pocket before entering the residence. Thus, the actual drug transaction was not recorded, although the device continued to record audio.

Bird was not arrested until months later so that the NEU's investigation could continue. On January 28, 2022, Bird's jury trial began. In addition to the testimony from the detectives, the Commonwealth called Feigles to testify. The Commonwealth asked him about his prior criminal history. Feigles acknowledged that, as a drug user, he had committed several theft-related crimes to support his habit. Feigles also agreed that, after being charged with burglary in 2019, he sought to cooperate with the police in order to receive a lighter sentence.

Feigles testified that he had known Bird for several years and recognized his voice on the phone. He then testified consistent with Detective Havens' testimony about arranging and completing the controlled buy. Additionally, Feigles testified about what occurred once he entered Bird's residence. He stated that Bird took him to the kitchen where Delong was standing. Feigles then testified that Bird gave him the methamphetamines and Feigles then left. According to Feigles, the entire transaction took less than five minutes, and he did not exchange anything with anyone else in the home. When asked by the prosecutor, Feigles testified that if Delong had given him the drugs, he would have identified Delong as the seller to Detective Havens.

Feigles further testified that as a result of his cooperation the pending burglary charge was pled down to a misdemeanor, and he was sentenced to time-served. Finally, Feigles testified that he was no longer using drugs and that he last used them in May of 2020.

On cross-examination, Feigles confirmed that Bird was his friend, and that Feigles occasionally stayed at the Bird residence. Although he admitted to using drugs daily in 2019, Feigles denied that he was on drugs the day of the controlled buy. Feigles testified that he had met Delong through Bird, and during that time did not know Delong to be a drug dealer.

Trial counsel then delved into Feigles' extensive criminal history beginning in 2002, and Feigles acknowledged that he was arrested for the unauthorized use of a vehicle after the controlled buy. Feigles also agreed that he had faced charges in two different counties, including driving under the influence, and, on one occasion, the charges were completely dropped.

Finally, in closing to the jury, trial counsel emphasized that the Commonwealth's case was based on Feigles' credibility. Counsel then argued that over the years Feigles had committed seven to eight crimes of dishonesty and his testimony was, therefore, unworthy of belief. Trial counsel also argued that Delong was known to NEU, had arrived shortly before the drug sale, and remained in the home during its completion. Counsel asked the jury if this was just a coincidence, thereby suggesting Delong played a role in the criminal activity.

Following the Commonwealth's brief closing, the trial court instructed the jury and the jury retired to deliberate. Ultimately, the jury found Bird guilty of delivering the methamphetamines and criminal use of a communications facility. On March 31, 2022, the trial court sentenced Bird to an aggregate term of two to seven years of imprisonment. Although Bird filed a timely appeal, he later withdrew it.

On September 22, 2022, Bird filed a *pro se* PCRA petition. The PCRA court appointed counsel, and on December 19, 2022, PCRA counsel filed an amended petition. After granting several continuances at Bird's request, the Court held an evidentiary hearing on October 12, 2023. Bird called trial counsel to testify, while the Commonwealth presented testimony from Detective Havens. Bird was not present, but had consented to holding the hearing in his absence. By order entered December 19, 2023, the PCRA court denied Bird's petition. This appeal followed. Both Bird and the PCRA court have complied with Pa.R.A.P. 1925.

Bird raises the following two issues on appeal:

A. Trial counsel provided ineffective assistance by failing to cross examine law enforcement to reveal to the jury that [Delong], who arrived at the residence where the drug sale took place between the time the transaction was arranged and when the transaction occurred and was present in the home when the transaction occurred, was a known seller of the same substance purchased and was convicted of selling that substance prior to trial even though it was established that [Feigles] met with [Bird] prior to going into the residence, but the transaction itself only occurred after [Feigles] entered the residence where [Delong] waited.

B. Trial counsel provided ineffective assistance by failing to fully investigate the credibility of [Feigles] and present evidence to the jury which would have altered the verdict.

Bird's Brief at 4.

This Court's standard of review for an order denying a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Webb*, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing *Commonwealth v. Barndt*, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

Both of Bird's issues challenge the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.*

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

- 6 -

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

In support of his first ineffectiveness claim, Bird argues that, although trial counsel had evidence that Delong was charged with selling methamphetamines after the sale for which Bird was charged, and Delong was convicted prior to Bird's trial, "counsel failed to make the jury aware of [Delong's] conviction for distributing the very substance [Bird] was charged with selling." Bird's Brief at 15. According to Bird, had trial counsel "revealed all of the facts surrounding [Delong,] the outcome of [Bird's] trial would have been different." *Id.* at 18.

We first note trial counsel attempted to inform the jury of Delong's conviction. When cross-examining Detective Rachael, trial counsel asked the detective if, at the controlled buy, he knew who Delong was. The detective

- 7 -

responded that he did not, but that Delong was known to the NEU. When asked if Delong was known to the unit for selling drugs, Detective Rachael answered that he was not "positive;" "I know he is at least a user. I don't know - - not off the top of my head I don't know if we [had] known he was a dealer or not." N.T., 1/28/22, at 90.

Before trial counsel could finish his next question, the following discussion occurred at sidebar:

> [TRIAL COUNSEL]: [Delong] pled [guilty] to delivery of a controlled substance, . . . specifically methamphetamine. I think that is important to get into.
>
> THE COURT: It - - to the argument that possibly he was the seller?
>
> [TRIAL COUNSEL]: Correct, correct,
>
> [THE PROSECUTOR]: Yeah, I think that is what we are doing here though, I think it should open our ability to talk about some of the other investigations that [Feigles] participated in, quite frankly.
>
> THE COURT: That who?
>
> [THE PROSECUTOR]: [Feigles] - - The defense has been objecting every time I try to mention [Feigles] participated - -
>
> THE COURT: Different people.
>
> [THE PROSECUTOR]: Yeah, with different people under investigation.
>
> [TRIAL COUNSEL]: [Feigles] wasn't the [confidential informant] in that case.
>
> THE COURT: Kind of flying pretty out pretty far. Do you contest that that's not relevant?
>
> [THE PROSECUTOR]: I haven't had a chance to review it. I mean I would argue it is not relevant - -

THE COURT: Well, he's simply trying to show that, in fact, [Delong] was convicted of selling methamphetamine.

[TRIAL COUNSEL]: The same drug. That's it.

THE COURT: And, obviously, his argument is that - - to argue to the [j]ury is that maybe [Delong] was the seller in this case.

[THE PROSECUTOR]: Well, I mean I assume it would open up some of the avenues of cross - - or some of the direct I can get from [Feigles] about this.

[TRIAL COUNSEL]: Well, cause he's not the [confidential informant] in [Delong's] case.

[THE PROSECUTOR]: No. You want [Feigles] to talk about [Delong] and his history after all this?

[TRIAL COUNSEL]: No.

[THE PROSECUTOR]: And do you want us to go up and bring up Detective Havens and say that we know that their investigation showed that after [Bird] got arrested [Delong] is the one that stood to sell the methamphetamine for [Bird]? Do you want to go down that road?

[TRIAL COUNSEL]: Well, - -

[THE PROSECUTOR]: Is that what you want to get into?

[TRIAL COUNSEL]: How will you get into that?

[THE PROSECUTOR]: I'll call Detective Havens right up to the stand.

[TRIAL COUNSEL]: That Delong started selling afterwards?

[THE PROSECUTOR]: Yes, this is all - - I mean obviously you're bringing it up. He got convicted of it.

[TRIAL COUNSEL]: That's fine. I'll withdraw this. That's fine. I think it is relevant but I've gotten - - [Detective Rachael] testified that he's known [Delong] so that's good enough for me.

THE COURT: Okay, thanks.

N.T., 1/28/24, at 90-92. Trial counsel then completed his cross-examination by reinforcing through Detective Rachael that Delong was still at the house when the drug transaction occurred.

Citing the above exchange, the PCRA court first discussed trial counsel's testimony from the evidentiary hearing:

> [Trial counsel] testified that the instant case was his first jury trial. At the time when he withdrew the offer to place [Delong's] conviction before the jury, he decided that the evidence of [Delong's] presence shortly before the transaction "was good enough."
>
> Obviously, at the trial [trial counsel] felt there was some danger that the Delong conviction might open the door to other negative evidence concerning [Bird].
>
> While saying this, we should note [trial counsel], in his [PCRA hearing testimony], acknowledged that in hindsight, he would have or should have tried to get the Delong conviction into evidence to be heard by the jury.

PCRA Court Opinion, 12/19/23, at 10-11 (footnote omitted).

The PCRA court then rejected Bird's first ineffectiveness claim because Bird could not establish prejudice. The court explained:

> We believe [Bird] fails in his claim for relief because he has not proven the third prong of the [ineffectiveness] test is applicable here.
>
> To satisfy this prong [Bird] would need to prove that the failure of [trial counsel] to offer into evidence the conviction of [Delong] for delivery of methamphetamines was deficient performance such that there was a reasonable probability that the result of the trial would have been different absent [trial counsel's] omission.
>
> We do not believe [Delong's] conviction, almost 6 months after [Bird's] delivery of methamphetamines directly to the

- 10 -

[confidential] informant would have changed the jury's verdict in this case.

There was substantial corroborative evidence of [Bird's] role in the delivery. He was picked up on surveillance waiting for [Feigles] outside his home and then meeting [Feigles] and walking into his home where the transaction occurred.

[Bird] was picked up on surveillance outside his home talking on his cell phone at the time [Feigles] was talking with him about the transaction.

[Feigles] personally testified in front of the jury that he then went into the home of [Bird] where [Bird] delivered the methamphetamines.

While the testimony did place [Delong] in the home at the time of the delivery, it would seem that if he had any role, it would be as an accomplice to Bird.

It makes little sense that all the drug sale contact was with [Bird], including walking [Feigles] into his home, but then finding that [Bird] had no role in the sale of the drugs.

We thus do not believe potential evidence of [Delong] delivering methamphetamines six months later to a different [confidential] informant in an entirely different location would have had a significant effect on the jury's finding.

In light of this, we don't believe [Bird] has met his burden of proof under the [PCRA]. . . . In short, we do not believe the purported evidence as to [Delong] would have changed the outcome of the case.

PCRA Court Opinion, 12/19/23, at 12-14 (footnote omitted).[1]

_____

[1] In the footnote, the PCRA court asserted it was arguable whether trial counsel had a reasonable basis for the failure to offer Delong's conviction because doing so might have opened the door to evidence of Bird's other bad acts. The PCRA court stated, however, "[w]e cannot say at this point whether this evidence would have opened the door to other bad acts, as we do not know how the Commonwealth would have proven their assertion." **Id.** at 12 n.3.

Our review of the record supports the PCRA court's conclusion. In arguing to the contrary, we first note that Bird's argument that he was observed on video under the influence of methamphetamines is unsupported by the record. *See* Bird's Brief at 18. Our review of the trial transcript reveals that, while the prosecutor asked Detective Rachael this question, trial counsel objected, the court sustained the objection, and the prosecutor withdrew the question. N.T., 1/28/24, at 82. Additionally, there is no support for any inference from Bird's arguments that Feigles acted on his own by "concealing" the audio/video device in his pocket before entering the house. Both Detective Havens and Feigles testified that Feigles was instructed to do so.

Bird claims he proved that he was prejudiced because Feigles, the only person to witness the drug transaction, was of "suspicious credibility." Bird's Brief at 19. He then likens his claim to this Court's decision in *Commonwealth v. Whiting*, 517 A.2d 1327 (Pa. Super. 1986), a case where we found trial counsel was ineffective for failing to impeach an eyewitness to the crime with his prior inconsistent statement when that statement would also have corroborated the defendant's testimony. Bird's reliance on *Whiting* is misplaced. Here, Feigles, prior to and at trial, consistently identified Bird as the person who sold him the methamphetamines. Additionally, Bird, unlike Whiting, did not testify at trial.

Finally, Bird's assertion that "the methamphetamine[s] could only be sold when [Feigles] had contact with [Delong]" is refuted by the record. Bird's Brief at 19. Feigles testified that he was certain he received the

methamphetamines from Bird and no one else. *See* N.T., 1/28/22, at 108.

Bird's first issue fails.

In support of his second issue, Bird summarizes his argument as follows:

Trial counsel also had significant, detailed evidence available to both question the credibility of [Feigles] through introduction of prior convictions for theft, and credit card theft and to directly contradict [Feigles'] statement that he used a small amount of methamphetamine[s] at the time this transaction occurred. Counsel had numerous examples of serious felony offenses being reduced to completely dismissed to benefit [Feigles] as a reward for his cooperation. Trial counsel did not use any of this information.

Bird's Brief at 15-16.

The PCRA court "easily disposed" of this issue. PCRA Court Opinion, 12/19/24, at 8. The court explained:

The trial record is replete with information about [Feigles'] criminal record and his expectation of benefit in cooperating with the Commonwealth.

The Commonwealth, in their opening statement to the jury, acknowledged [Feigles] had a significant criminal record and that when he initially offered to cooperate his pending burglary charges were dropped to minor misdemeanors.

[Trial] counsel cross examined [Feigles] about his methamphetamine use and his expectation of benefit from his cooperation. [Trial counsel] probed [Feigles'] criminal record and also the fact that when he became cooperative with the Commonwealth, he was released from jail on lowered bail.

While [trial] counsel may not have probed into every prior criminal contact [Feigles] had with the criminal justice system, he conveyed to the jury the basic factors to question [Feigles'] credibility.

[Trial counsel], in his closing argument to the jury, again strongly argued this point.

> We do not believe [trial counsel] was ineffective in regard to this issue.

*Id.* at 8. Our review of the record supports the PCRA court's conclusion.

First our review of the trial transcript provides no evidence that Feigles stated he used a small amount of methamphetamines on the date of the drug sale. In fact, Feigles denied using drugs that day. However, trial counsel got him to concede that he used drugs almost daily that month. *See* N.T., 1/28/22, at 116-17. Additionally, the record also refutes Bird's claim that Feigles "intentionally concealed an audio and video recording device immediately before entering the residence where the alleged transaction occurred." Bird's Brief at 23. Bird cites to PCRA counsel's question to trial counsel at the evidentiary hearing to support this proposition. As stated above, both Detective Havens and Feigles testified that Feigles was instructed to do so. On this issue, Bird essentially argues a hindsight view of trial counsel's cross-examination of Feigles regarding his criminal history. Such an analysis does not establish ineffectiveness. *Sandusky*, *supra*. Bird's second issue fails.

In sum, neither of Bird's claims of trial counsel's ineffectiveness affords him post-conviction relief. We therefore affirm the PCRA court's order denying his petition.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/21/2024